**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOHN SABAL** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:23-CV-00551-O** |
| | § | |
| **LIN WOOD** | § | |
| | § | |
| *Defendant.* | § | |

---

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS
COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

---

Roland P. Schafer
State Bar No. 24056271
roland@bondsellis.com
John T. Wilson IV
State Bar No. 24033344
john.wilson@bondsellis.com
Jared A. Hendrix
State Bar No. 24124775
jared.hendrix@bondsellis.com
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
Phone: 817-405-6900
Fax:   817-405-6902

Barry A. Moscowitz
State Bar No. 24004830
bmoscowitz@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Phone: (214) 871-8200
Fax: (214) 871-8209

**ATTORNEYS FOR DEFENDANT
LIN WOOD**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................ 1

EVIDENCE SUPPORTING THE MOTION ................................................................... 2

BACKGROUND .............................................................................................................. 2

   A.  Mr. Wood is a resident of South Carolina and has no presence in Texas. ........................ 2

   B.  Plaintiff's claims arise from statements that reached a national audience and
did not concern Texas. ..................................................................................................... 3

ARGUMENT AND AUTHORITIES ............................................................................... 4

   A.  Standards and principles in evaluating jurisdictional allegations. ..................................... 4

      1.  The plaintiff bears the burden of establishing personal jurisdiction. ............................ 4

      2.  The Constitution protects a nonresident from being haled into a jurisdiction
where the nonresident has not purposefully established contacts. ................................ 5

   B.  Plaintiff has failed to establish jurisdiction over Mr. Wood. ............................................ 6

      1.  Because Mr. Wood is a resident of South Carolina, Plaintiff cannot
establish general jurisdiction over Mr. Wood in Texas. ................................................ 7

      2.  Plaintiff cannot establish specific jurisdiction because this suit does not
arise out of any contacts that Mr. Wood has with the State of Texas. ......................... 8

         a.  To find specific jurisdiction based on defamation claims, the defamatory
statements must be "aimed at" Texas. ...................................................................... 9

         b.  Mr. Wood's online statements have no connection to Texas. ............................... 12

         c.  Plaintiff's other allegations do not support personal jurisdiction over Mr.
Wood in Texas. ......................................................................................................... 15

      3.  Exercising personal jurisdiction over Mr. Wood would violate traditional
notions of fair play and substantial justice. ................................................................... 17

CONCLUSION AND PRAYER ...................................................................................... 18

CERTIFICATE OF SERVICE ........................................................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017) ................................................................................. 6, 9

*BroadVoice, Inc. v. TP Innovations LLC*,
  733 F. Supp. 2d 219 (D. Mass. 2010) ...................................................... 13

*Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels.*,
  1 F.4th 346 (5th Cir. 2021) ..................................................................... 8, 9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .................................................................................. 5, 6

*Calder v. Jones*,
  465 U.S. 783 (1983) ..................................................................................... 10

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ........................................................... 4, 11, 14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................ 4, 7, 8

*Evergreen Media Holdings, LLC v. Safran Co.*,
  68 F. Supp. 3d 664 (S.D. Tex. 2014) ........................................................ 17

*Fielding v. Hubert Burda Media*, Inc.,
  415 F.3d 419 (5th Cir. 2005) ..................................................................... 15

*Gen. Retail Servs. v. Wireless Toyz Franchise, L.L.C.*,
  255 F. App'x 775 (5th Cir. 2007) .............................................................. 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ...................................................................................... 7

*Higgins v. Save Our Heroes*,
  No. 18-42, 2018 WL 2208319 (D. Minn. May 14, 2018) ......................... 13

*Hollinger v. Home State Mut. Ins. Co.*,
  654 F.3d 564 (5th Cir. 2011) ....................................................................... 7

*In re Levy*,
  52 F.4th 244 (5th Cir. 2022) ........................................................................ 8

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
  818 F.3d 193 (5th Cir. 2016) ....................................................................... 4

*Johnson v. TheHuffingtonpost.com, Inc.*,
   21 F.4th 314 (5th Cr. 2021) ................................................................. 12

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ............................................................. 4,5

*Professional's Choice Sports Medicine v. Hegeman*,
   No. 15-2505, 2016 WL 1450704 (S.D. Calif. April 12, 2016) ............... 13

*Quick Techs. v. Sage Grp. Plc*,
   313 F.3d 338 (5th Cir. 2002) ................................................................. 5

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ....................................... 5, 9, 10, 11, 12, 13, 15

*Sangha v. Navig8 Shipmanagement Private Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ................................................................... 8

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................ 5, 6, 9, 15, 16

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................. 17

*Xenex Disinfection Servs., LLC v. Deal*,
   No. 16-232, 2016 WL 3033779 (W.D. Tex. May 25, 2016) .................... 13

## STATE CASES

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
   815 S.W.2d 223 (Tex. 1991) ................................................................... 7

*Michiana Easy Livin' Country, Inc. v. Holten*,
   168 S.W.3d 777, 784 (Tex. 2005) ........................................................... 6

Defendant Lin Wood respectfully submits this Brief in Support of his Motion to Dismiss Complaint for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## INTRODUCTION

Plaintiff's Complaint is a clear example of artful pleading designed to assert aggrandized claims without fact or substance. Plaintiff appears to have brought this suit against Mr. Wood, a South Carolina citizen, in an effort to intimidate and silence Mr. Wood's free speech. And while Mr. Wood contests the validity of Plaintiff's claims, this Court is not the proper forum in which to hear this dispute because Plaintiff has failed to plead facts that support personal jurisdiction. Because Mr. Wood is not subject to personal jurisdiction in Texas, let alone the Northern District of Texas, dismissal is the proper result.

Mr. Wood's legal career began in 1977, and has included numerous high-profile and nationally followed cases; perhaps most notably, that of Richard Jewell against various media outlets after being falsely accused of the 1996 Centennial Olympic Park Bombing. Spanning over four decades, Mr. Wood's career has further included representations of members of the United States Congress, and former 2012 presidential candidate Herman Caine.

In the early 2020s, Plaintiff created an organization and website called The Patriot Voice, through which he has organized rallies across the country. Plaintiff has become known online as "QAnon John" due to his vocal adoption and republishing of conspiracy theories. In 2022, Plaintiff asked Mr. Wood to host and speak at an event to be held in South Carolina at Mr. Wood's property. While Mr. Wood initially agreed, he reconsidered and declined to host Plaintiff's event.

Unable to locate a suitable replacement venue, Plaintiff canceled the event. However, it is understood and believed that Plaintiff continued to advertise and sell tickets to the event, all the while representing that Mr. Wood would be a featured speaker. It is further understood and believed that Plaintiff failed to offer refunds to those who had already purchased tickets. The

cancelation of the South Carolina event and Plaintiff's refusal to refund purchased tickets prompted Mr. Wood's posts on the social messaging application Telegram, which form the basis for Plaintiff's Complaint. Moreover, some of Mr. Wood's posts were in fact direct responses to Plaintiff's own posts on Telegram.

Importantly, Mr. Wood's posts were not made in Texas and had nothing to do with Texas. Instead, they were made from South Carolina and concerned Plaintiff's cancellation of the South Carolina event. The mere fact that some readers, including Plaintiff, may have accessed the posts in Texas is an insufficient basis to subject Mr. Wood to personal jurisdiction in Texas. Indeed, Plaintiff's Complaint does not contain any allegations or facts establishing any connection between Mr. Wood and Texas. Therefore, the Court must dismiss Plaintiff's Complaint under rule 12(b)(2) for lack of personal jurisdiction.

## EVIDENCE SUPPORTING THE MOTION

Exhibit 1 – Affidavit of Lin Wood

## BACKGROUND

**A.     Mr. Wood is a resident of South Carolina and has no presence in Texas.**

Mr. Wood is a citizen of South Carolina and has lived in Yemassee, South Carolina, since February 2021.[1] [App. 001, ¶ 2 (Affidavit of Lin Wood)] Prior to his recent retirement, Mr. Wood practiced law in Atlanta, Georgia, where he maintained a residence.[2] [*Id.*] Mr. Wood does not use, possess, lease, or have any interest in any property in Texas. [*Id.*]

Mr. Wood was licensed to practice law by the State Bar of Georgia in 1977. [*Id.* ¶ 3] From that time until his recent retirement on July 4, 2023, Mr. Wood has taken on high-profile cases

---

[1] The facts relevant to Mr. Wood's residence, citizenship, and activities are set forth in the accompanying Affidavit of Lin Wood.
[2] While Mr. Wood officially retired on July 4, 2023, Mr. Wood has not represented clients other than himself, pro se, since December 2020.

across the nation, bringing national recognition and notoriety to his name. [*Id.*] During Mr. Wood's 46-year career as an attorney, he recollects handling only two matters in Texas. [App. 002, ¶ 4] However, those matters were over ten years ago and are wholly unrelated to the allegations in Plaintiff's Complaint. [*Id.*] Mr. Wood has never been licensed in Texas, and in the matters he has handled in Texas, he appeared pro hac vice. [*Id.*] Moreover, Mr. Wood has never advertised his services in Texas. [*Id.*]

Mr. Wood's daily business and activities do not concern Texas. Mr. Wood's only current connection with Texas is his service as Chairman of the board for #FightBack Foundation, Inc. ("#FightBack"), a non-profit corporation incorporated in Texas. [*Id.*, ¶ 5] But while #FightBack maintains a registered agent in Texas, all of #FightBack's corporate activities are conducted in Atlanta, Georgia, and concern national issues. [*Id.*] Likewise, #Fightback uses a P.O. Box in Georgia as its mailing address. [*Id.*]

Mr. Wood did know that Plaintiff resided in Texas prior to receiving a copy of Plaintiff's Complaint [*Id.* ¶ 6] Mr. Wood's knowledge regarding Plaintiff's residence in Texas is based solely on his review of Plaintiff's Complaint. Mr. Wood's only interactions with Plaintiff have been at Mr. Wood's property in South Carolina, through social media—such as Telegram—or through text messages. [*Id.*] At no time has Mr. Wood traveled to Texas to meet with Plaintiff or attend any event organized by Plaintiff. [*Id.*]

**B.    Plaintiff's claims arise from statements that reached a national audience and did not concern Texas.**

Mr. Wood's primary tool for communicating with his national following is the social media platform, Telegram. [*Id.* ¶ 7] Telegram is a "cloud-based social messaging application" on which Mr. Wood operates a channel called @linwoodspeakstruth. [Doc. 1, ¶ 2 (Plaintiff's Complaint)] Mr. Wood's channel on Telegram is public, which anyone can follow or join free of charge,

allowing them to view the content posted therein. Mr. Wood's channel has over 360,000 followers. [*Id.*] Of course, Mr. Wood does not—and in fact could not—know each and every one of his followers or where they live. [App. 002, ¶ 7] Since Mr. Wood is a nationally-recognized figure, his following on Telegram is assumed to span the nation, if not the globe.

Importantly, the events referred to in the Telegram posts in question occurred outside of Texas. More specifically, the "Patriot" event that Plaintiff canceled without refunding prepaid tickets was to be held in South Carolina. [*Id.* ¶ 8] Plaintiff's Complaint does not concern any contact Mr. Wood may have had with Texas—such as his previous appearance in lawsuits in Texas or his service as a director for a non-profit corporation formed in Texas.

## ARGUMENT AND AUTHORITIES

### A.   Standards and principles in evaluating jurisdictional allegations.

#### 1.   The plaintiff bears the burden of establishing personal jurisdiction.

"In *Pennoyer v. Neff*, decided shortly after the enactment of the Fourteenth Amendment, the Court held that a tribunal's jurisdiction over persons reaches no farther than the geographic bounds of the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (citing *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565 (1878)). A court must dismiss an action when it lacks personal jurisdiction over the defendant. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 (5th Cir. 2016).

The plaintiff bears the initial burden of establishing personal jurisdiction over a nonresident defendant. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). A plaintiff meets that burden by making a prima facia showing of personal jurisdiction. *Id.*

Establishing a prima facie case "requires the plaintiff to show the nonresident defendant's purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 217, 485 L. Ed. 2d 528 (1985)). The prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted. *Id.* (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)).

"In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Quick Techs. v. Sage Grp. Plc*, 313 F.3d 338, 344 (5th Cir. 2002) (quoting *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

## 2. The Constitution protects a nonresident from being haled into a jurisdiction where the nonresident has not purposefully established contacts.

A district court may exercise personal jurisdiction over a nonresident defendant in a diversity action only if "(1) the long arm statute of the forum state creates personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction is consistent with due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 470-71 (5th Cir. 2002). Federal due process is satisfied (1) when a defendant has personally availed himself of the benefits and protections of Texas through certain minimum contact with Texas, and (2) when the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.*

"Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts … such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Walden v. Fiore*, 571 U.S. 277, 282, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). A nonresident defendant must have purposefully established such minimum contacts with the forum that it should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474. "Due process

limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284.

The "constitutional touchstone" is whether the defendant *purposefully* established minimum contacts in the forum State. *Burger King*, 471 U.S. at 474; *see also Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction as a result of "'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475. There are three relevant aspects of the purposeful availment requirement:

> First, it is ***only the defendant's contacts*** with the forum that count: purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of … the 'unilateral activity of another party or a third person.'"
>
> Second, the acts relied on must be "purposeful" rather than fortuitous. Sellers who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to the jurisdiction of the latter in suits based on their activities. By contrast, ***a defendant will not be haled into a jurisdiction solely based on contacts that are "random, isolated, or fortuitous***."
>
> Third, a defendant must seek some benefit, advantage, or profit by "availing' itself of the jurisdiction. Jurisdiction is premised on notions of implied consent—that by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. By contrast, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction.

*Michiana Easy Livin'*, 168 S.W.3d at 785 (quoting *Burger King*, 471 U.S. at 473, 475, and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)) (emphasis added).

## B.    Plaintiff has failed to establish jurisdiction over Mr. Wood.

The Supreme Court has recognized two types of personal jurisdiction: "general" jurisdiction and "specific" jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017). Plaintiff has not satisfied his burden to establish

either general or specific jurisdiction. Therefore, Mr. Wood is not subject to personal jurisdiction in Texas, and this case must be dismissed.

1.  **Because Mr. Wood is a resident of South Carolina, Plaintiff cannot establish general jurisdiction over Mr. Wood in Texas.**

General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state, but there are continuous and systematic contacts between the nonresident defendant and the forum state. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991) (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state. *Id.*

The United States Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137.  For an individual, the "paradigm forum" for the exercise of general jurisdiction is the individual's domicile." *Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 180 L. Ed. 2d 796  (2011).

Plaintiff cannot establish general jurisdiction over Mr. Wood in Texas. Evidence of a person's place of residence is prima facie proof of his domicile. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011). Mr. Wood has submitted the Affidavit of Lin Wood, in which he affirms that South Carolina is his residence and, thus, his domicile.

Plaintiff does not rebut this fact, but instead concedes in his Complaint that Mr. Wood is not a Texas citizen.[3] [Doc. 1, ¶ 2]. Indeed, because Plaintiff is a Texas citizen, if Mr. Wood were

---

[3] The Complaint actually mistakenly identifies Mr. Wood as a "citizen of Georgia." Nevertheless, the Complaint concedes that Mr. Wood is not domiciled in Texas.

also a Texas citizen, this Court could not exercise diversity jurisdiction over this action. *See In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022) ("Each plaintiff must be diverse from each defendant, *i.e.*, there must be what is known as 'complete diversity.'").

As Mr. Wood's Affidavit states, he is a South Carolina citizen and lives in Yemassee, South Carolina. [App. 1 ¶ 2] Mr. Wood has no property interests in Texas and does not conduct business there. [*Id.* ¶ 5] For the entirety of Mr. Wood's career as an attorney, he was licensed and maintained an office in Georgia. [*Id.* ¶¶ 2-3] Aside from a small number of cases, which have been long-resolved, Mr. Wood has never maintained a practice in Texas or otherwise solicited business in Texas. [*Id.* ¶ 4]

Despite Plaintiff's conclusory allegation that "Wood is at home in Texas," his Complaint is devoid of facts establishing that Mr. Wood has any contacts with Texas that are so substantial, continuous, and systematic as to render Mr. Wood "essentially at home in the forum state." [Doc. 1, ¶ 4] *Daimler*, 571 U.S. at 139. Consequently, Plaintiff has failed to establish general jurisdiction over Mr. Wood.

### 2. Plaintiff cannot establish specific jurisdiction because this suit does not arise out of any contacts that Mr. Wood has with the State of Texas.

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *Daimler*, 571 U.S. at 125. In Texas, courts evaluate personal jurisdiction over nonresident defendants through a two-step inquiry, ensuring compliance with the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels.*, 1 F.4th 346, 351 (5th Cir. 2021). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

Specific jurisdiction requires that the suit arise out of or relate to the defendant's contacts with the forum state. *Bristol-Myers*, 582 U.S. at 262; *Revell*, 317 F.3d at 470. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.*

In assessing whether specific jurisdiction over a nonresident defendant comports with due process, the Fifth Circuit applies a three-step inquiry. *See Bulkley & Assocs.*, 1 F.4th at 351. First, to evaluate minimum contacts, courts ask whether the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* Second, courts ask if the case "arises out of or results from the defendant's forum-related contacts." *Id.* And third, courts ask whether "the exercise of personal jurisdiction is fair and reasonable." *Id.* Only if all three questions are answered in the affirmative will personal jurisdiction over an out-of-state defendant satisfy due process. *Id.*

### a.   To find specific jurisdiction based on defamation claims, the defamatory statements must be "aimed at" Texas.

The circumstances allowing the exercise of specific jurisdiction are narrow in scope. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Thus, the defendant's relationship with the state "must arise out of the contacts that the defendant *himself* creates with the forum State," and the Court's analysis of minimum contacts must focus on "the defendant's contacts with the forum State itself, ***not the defendant's contacts with persons who reside there***." *Id.* at 284-85 (emphasis added).

This case involves claims of defamation arising from statements made by Mr. Wood in South Carolina on an internet messaging service. Prior to the internet, the United States Supreme

Court considered similar issues in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1983). There, the National Enquirer, a national magazine based in Florida, published an article written and edited in Florida. The allegedly libelous story concerned the California activities of a California resident and was drawn from California sources. The plaintiff was a television entertainer who felt the brunt of the harm, in terms of the injury to her professional reputation, in California. Therefore, California was the focal point of both the story and the harm suffered. The Court found that personal jurisdiction existed in California because the "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789.

Drawing on principles established in *Calder*, the Fifth Circuit later considered in *Revell v. Lidov* whether a defamation defendant could be subject to personal jurisdiction in Texas based on an article posted to an internet bulletin board. 317 F.3d 467 (5th Cir. 2002). There, a professor posted an article about the terrorist bombing of Pan Am Flight 103 (which exploded over Lockerbie, Scotland) on an internet bulletin board hosted by Columbia University. The article implicated a former associate deputy director of the FBI (who had later moved to Texas) in a government conspiracy and cover-up. The Fifth Circuit declined to find jurisdiction over either the professor or the university.

In declining to find personal jurisdiction, the Court distinguished the holding in *Calder*. Importantly, unlike the facts of *Calder*, the article in *Revell* contained no reference to Texas, did not refer to any Texas activities of Revell, and was not directed towards Texas readers—as distinguished from readers in other states. *Id.* at 473. As the Court explained, "Texas was not the focal point of the article or the harm suffered." *Id.*

The Court expressly held that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Id.* The Court further explained that "one

cannot purposefully avail oneself of 'some forum someplace.'; rather, as the Supreme Court has stated, due process requires that the 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 475.

The Fifth Circuit applied the holdings of *Calder* and *Revell* in *Clemens v. McNamee*, a defamation case brought by Roger Clemens against his former trainer, Brian McNamee. 615 F.3d 374, 379 (5th Cir. 2010). McNamee had trained Clemens during Clemens' time with the Toronto Blue Jays and the New York Yankees. During this time, McNamee traveled to Texas approximately 35 times to train Clemens.

As part of the federal government's investigation of a laboratory accused of supplying performance-enhancing drugs to professional athletes, McNamee told federal investigators that he had injected Clemens with performance-enhancing drugs in Toronto and New York. As part of an independent investigation, Major League Baseball publicly released McNamee's statements in the Mitchell Report, and every national news source, as well as every major newspaper in Texas, republished McNamee's statements. McNamee later gave an interview to a writer for SI.com from his home in New York. During the interview, McNamee repeated his statements, and SI.com posted an article containing the statements.

Clemens' lawsuit concerned the statements that McNamee made to the Mitchell Commission, as well as to SI.com. The Fifth Circuit declined to find personal jurisdiction over McNamee in Texas, finding that the statements did not constitute purposeful availment such that McNamee could reasonably anticipate being haled into a Texas court. In so finding, the Court recognized that the statements concerned non-Texas activities, were not made in Texas, and were not directed to residents of Texas. *Id.* at 380.

More recently, the Fifth Circuit again considered an internet defamation case in *Johnson v. TheHuffingtonpost.com, Inc.*, 21 F.4th 314 (5th Cr. 2021). There, Johnson, a Texas resident, claimed that the Huffington Post libeled him in an online article. The Fifth Circuit found that its decision in *Revell* required dismissal of the claims. Similar to *Revell*, the story did not contain any ties to Texas and did not mention Texas. Instead, the story recounted a meeting that took place outside of Texas. *Id.* at 318.

### b. Mr. Wood's online statements have no connection to Texas.

*Revell*, *Clemens*, and *Johnson* require dismissal of Plaintiff's claims here. Importantly, Mr. Wood's online comments were not specifically broadcast to Texas and did not concern Texas in any way. Instead, the posts concerned the cancellation of an event in South Carolina and did not even mention Texas. In fact, Mr. Wood has stated that he did not know Plaintiff lived in Texas. [App. 002, ¶ 6]

That Mr. Wood did not realize that Plaintiff would feel the effects of Mr. Wood's comments in Texas is important. Although not determinative, "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test." *Revell*, 317 F.3d at 475. This is because "the defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum." *Id.*

### (1) Mr. Wood's online posts were not aimed at Texas.

Plaintiff's defamation claim is based solely on statements made by Mr. Wood on the "cloud-based social messaging application Telegram." [Doc. 1, ¶¶ 2, 6] Telegram channels "are a tool for broadcasting public messages to large audiences," much like any other online publication.[4]

---

[4] *See What's a channel*, Telegram, https://telegram.org/faq_channels (July 9, 2023, 6:52 PM).

As with public Facebook or Twitter posts, there is no accurate way to know where the readers of the posts may be located. [Doc. 1, ¶¶ 2, 12] As Plaintiff concedes, "[Mr.] Wood used his high-profile status to amplify the Statements and publish them to a ***vast audience***," which merely includes some "prospective supporters, donors and beneficiaries of #FightBack in Texas." [*Id.*, ¶ 6 (emphasis added)]

That the allegedly defamatory statements were made over a cloud-based social messaging platform highlights the absence of jurisdiction. Websites like Telegram, Twitter, and Facebook are "not social media pages specifically targeted to Texas residents," but rather are aimed at the world at large. *Xenex Disinfection Servs., LLC v. Deal*, No. 16-232, 2016 WL 3033779, at \*3 (W.D. Tex. May 25, 2016) (dismissing case for lack of personal jurisdiction where alleged defamation occurred over social media including Twitter, which did not "specifically target" Texas).[5] Such communications accessible to anyone anywhere with a computer or a mobile device simply cannot be said to "manifest an intent to *target* and *focus* on" Texas. *Revell*, 317 F.3d at 475 (emphasis in original) (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002)).

### (2) Mr. Wood's online posts did not mention or concern Texas.

None of Mr. Wood's alleged statements mention, implicate, or concern Texas. The word "Texas" is not contained in any of the alleged statements. Mr. Wood's statements concern events

---

[5] *See also Higgins v. Save Our Heroes*, No. 18-42, 2018 WL 2208319, at \*3-5 (D. Minn. May 14, 2018) (dismissing for lack of jurisdiction where defamatory statements were made over social media because the statements were not "particularly connected to Minnesota," even though plaintiff lived there; "if the use of a Facebook page or Twitter handle was sufficient to confer personal jurisdiction, a defendant could be haled into court in any state"); *see also Professional's Choice Sports Medicine v. Hegeman*, No. 15-2505, 2016 WL 1450704, at \*4-6 (S.D. Calif. April 12, 2016) (defamatory statements over Facebook did not demonstrate that the defendant expressly aimed its tortious conduct at the forum); *see also BroadVoice, Inc. v. TP Innovations LLC*, 733 F. Supp. 2d 219, 226 (D. Mass. 2010) (defamatory statements made on website specifically created to voice complaints against the plaintiff did not establish minimum contacts because the "defamatory website was aimed at Massachusetts only in the sense that it could be accessed by Massachusetts residents (along with the rest of the world)").

and issues wholly outside the state of Texas. The event referenced in the below statements was

scheduled in South Carolina, *not* in Texas:

> "I called out this FAKE Patriot below when he postponed a 'Patriot' event but kept collecting registration fees for weeks without telling the TRUTH about the 'alleged; postponement of the event."

> "Did you refund ALL the people you ripped off in connection with your last 'event' for which you continued to collect fees weeks after you knew it would be postponed (or never happen)???"

[Doc. 1, ¶ 6 (the "FAKE Patriot" being John Sabal)]

As Plaintiff notes, "Tomotley" referenced in the quoted statement below refers to Mr.

Wood's property in South Carolina:

> "Hey, QAnon John, come back to Tomotley for another visit. You loved me when you came here to use me to line your grifter pockets. I knew who you were from then [sic] beginning. I know who you are now, Johnny Boy. You will not come back to Tomotley because you are a coward."

[Doc. 1, ¶ 12] And the following statement quoted in Plaintiff's Complaint clearly implicates the

State of Georgia:

> "Who is REALLY trying to ruin my reputation, silence my voice, damage me financially, and prevent me from practicing law??? The State Bar of Georgia or Flim Flam Flynn and his comrades??? Or both??? State Bar of Georgia + Flim Flam Flynn = Deep State."

[*Id.* ¶ 6]

The statements that form the basis of Plaintiff's Complaint make clear that Texas is not the

focal point of Mr. Wood's statements. Where statements about a Texas resident were not made in

Texas, did not concern Texas activities, and were not "directed to Texas residents any more than

residents of any state," the defendant's contacts are not sufficient to confer personal jurisdiction—

even if a defendant knew the plaintiff lived and would suffer harm in Texas. *Clemens v. McNamee*,

615 F.3d 374, 377-381 (5th Cir. 2010) (finding no personal jurisdiction where defamatory

statements that were published in "every major newspaper in Texas" because although the

defendant knew that the plaintiff lived in Texas and traveled to Texas on numerous occasions to work with plaintiff, the statements concerned activities which occurred outside of Texas, the statements were not made in Texas, and the statements were directed at a national audience); *Fielding v. Hubert Burda Media*, Inc., 415 F.3d 419, 425-28 (5th Cir. 2005) (finding no personal jurisdiction where defamatory statements were based on Texas sources and expressly discussed Texas because involvement of Texas was "merely collateral to the focus of the articles"); *Revell*, 317 F.3d at 473-75 (finding no personal jurisdiction where defamatory statements concerning a Texas resident were posted on the internet because the statements did not mention Texas and "[were] not directed at Texas readers as distinguished from readers in other states").

### c.  Plaintiff's other allegations do not support personal jurisdiction over Mr. Wood in Texas.

As demonstrated above, the allegedly defamatory internet posts did not target Texas and did not concern Texas. Plaintiff, however, attempts to create other ties to Texas in his Complaint, unrelated to the internet postings. Beyond the fact that these Texas references have no nexus with Plaintiff's cause of action, these additional allegations do not support a finding of personal jurisdiction.

### (1) Mr. Wood cannot be liable for the actions of third parties.

Plaintiff alleges that "Wood, #FightBack and agents enlisted by Wood (pseudo anonymous accounts called "Buck Nasty Exposed" and "The Breb Room") repeatedly accused Sabal of committing fraud and stealing from his supporters. They went so far as to dox Sabal and his wife's work address." [Doc. 1, ¶ 6] The Court's due process analysis must focus on *Mr. Wood's* contacts with Texas, and not those of Plaintiff or a third party. *Walden*, 571 U.S. at 291. First, there is no evidence that the posters behind "Buck Nasty Exposed" or "The Breb Room" are agents or were in any way under the control of Mr. Wood. Second, these posts would be insufficient to subject

Mr. Wood to jurisdiction in Texas even if he had made them. As with Mr. Wood's own posts, the allegation that the posters "went so far as to dox Sabal and his wife's work address" has no demonstrable connection to Texas. What is more, Plaintiff fails to substantiate his claims with any evidence of an actual statement. These conclusory allegations regarding statements made by third parties simply do not support a finding of jurisdiction over Mr. Wood. *Id.*

### (2) The allegations regarding #FightBack do not support a finding of jurisdiction.

Plaintiff alleges that "Wood is Chairman of the Board and CEO of #FightBack," which "is a Texas 501(c)(4) organization." [Doc. 1, ¶ 2] Plaintiff further alleges that "Wood uses Telegram and #FightBack [to] solicit donations from Texans." [*Id.*] Plaintiff, for obvious reasons, did not name #FightBack as a defendant in his Complaint, as that would destroy diversity under 28 U.S.C 1332(a). And while #FightBack would presumably be subject to general jurisdiction in Texas as the state of its incorporation, Plaintiff may not use #Fightback's Texas contacts to bootstrap personal jurisdiction over Mr. Wood. Moreover, #FightBack's contacts with Texas cannot be attributed to Mr. Wood due to the fiduciary shield doctrine, which prohibits the attribution of corporate acts to corporate officers and directors. *See Gen. Retail Servs. v. Wireless Toyz Franchise, L.L.C.*, 255 F. App'x 775, 794 (5th Cir. 2007).

### (3) The "Tomotley Talks" allegations do not support jurisdiction over Mr. Wood.

Finally, Plaintiff alleges that "'Tomotley' is a reference to Wood's property in South Carolina. 'Tomotley Talks' is a podcast produced and broadcast in Texas by Wood and #FightBack." [Doc. 1, ¶ 12, n.5] First, as Plaintiff concedes, references to "Tomotley" by Mr. Wood refer to his property in South Carolina. However, Plaintiff has no basis or support for his allegation that the Tomotley Talks podcast is produced or broadcast in Texas. Mr. Wood records Tomotley Talks from his property in South Carolina, and no production or broadcasting of the

podcast is conducted in Texas. [App. 002, ¶ 9] In any event, Plaintiff's reference to the podcast in a footnote of his Complaint is curious as he does not make any allegations against Mr. Wood concerning the podcast.

### 3. Exercising personal jurisdiction over Mr. Wood would violate traditional notions of fair play and substantial justice.

Plaintiff has failed to establish that the exercise of personal jurisdiction over Mr. Wood would comport with due process. But even if Plaintiff could carry this heavy burden, personal jurisdiction would be improper because it would "offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). The Fifth Circuit considers five factors in evaluating whether the exercise of jurisdiction is unreasonable: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the efficient administration of justice; and (5) the shared interests of the several states in furthering fundamental social policies. *See Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014). Application of these factors confirms that exercising jurisdiction here would offend traditional notions of fair play and substantial justice.

First, because he lives in South Carolina, it would burden Mr. Wood to litigate this matter in Texas. [App. 001, ¶ 2] Second, Texas has little to no interest in this litigation. The only connection this lawsuit has to Texas is the fact that Plaintiff resides in Texas. That fact, by itself, is insufficient to implicate Texas interests—especially since the subject matter of the dispute concerns statements made on a cloud-based platform regarding out-of-state events and activities. Third, it is not necessary for Plaintiff to maintain his suit in Texas to obtain relief. Adequate causes of action exist in states with proper jurisdiction, and Plaintiff would face no burden in bringing the

same claim in another jurisdiction.[6] Fourth, Texas is not the most efficient forum, given that a significant portion of any evidence, including witnesses, will be located outside of Texas. Mr. Wood is located in South Carolina, and the event mentioned in Mr. Wood's statements concerned a South Carolina event. While advertised nationally, these events draw mostly local interest, and it is likely that to prove the truthfulness of Mr. Wood's statements (that Plaintiff refused to refund tickets for the postponed event), witnesses residing in South Carolina, or nearby, would be needed. Fifth, while this lawsuit implicates issues concerning lawful speech, it presents a standard tort claim and concerns parties with significant online followings centered on national politics. In no way is the interest of Texas any more relevant than the interest of any other state. Thus, even if jurisdiction were otherwise permissible, exercising jurisdiction over Mr. Wood would offend traditional notions of fair play and substantial justice.

## <u>CONCLUSION AND PRAYER</u>

In attempting to establish personal jurisdiction over Lin Wood, a South Carolina resident, Plaintiff has undertaken a heavy burden, which he simply cannot sustain. Therefore, the Complaint against Mr. Wood should be dismissed for lack of personal jurisdiction.

---

[6]In fact, Plaintiff has already obtained out-of-state counsel for this cause, Steven Biss.

Respectfully submitted,

*/s/ Roland P. Schafer*
Roland P. Schafer
State Bar No. 24056271
roland@bondsellis.com
John T. Wilson IV
State Bar No. 24033344
john.wilson@bondsellis.com
Jared A. Hendrix
State Bar No. 24124775
jared.hendrix@bondsellis.com
BONDS ELLIS EPPICH SCHAFER JONES LLP
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
Phone: 817-405-6900
Fax:   817-405-6902

*/s/ Barry A. Moscowitz*
Barry A. Moscowitz
State Bar No. 24004830
bmoscowitz@thompsoncoe.com
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Phone: (214) 871-8200
Fax: (214) 871-8209

**ATTORNEYS FOR DEFENDANT
LIN WOOD**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 4th day of August 2023, a true and correct copy of the above and foregoing document was served upon all counsel of record via the Court's CM/ECF system in accordance with the Federal Rules of Civil Procedure.

Madhu S. Sekharan
Texas Bar No. 24072332
16614 Radiant Lilac Trail
Cypress, Texas 77433-6365
msekharanattorney@outlook.com

Steven S. Biss
Virginia Bar No. 32972
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
stevenbiss@eartlink.net

**ATTORNEYS FOR JOHN SABAL**

*/s/ John T. Wilson IV*
John T. Wilson IV